Daniel, J.
By the common law a carrier is treated as an insurer against all damage to, or loss of, goods entrusted to him for transportation, except such as may arise from the act of God, the act of the enemies of the country, or the act of the owner of the goods. In the case of Murphy, Brown & Co. v. Staton, 3 Munf. 239, it was decided by this Court that the owners of boats engaged in the upper navigation of James river were subject to this rule, and liable for losses arising from the dangers of that navigation. It was also further decided in that case that if a loss happens, the onus lies on the carrier to exempt himself from liability; and that his defence is not sustained by shewing that the navigation is attended with so much danger that a loss may happen, notwithstanding the utmost efforts to prevent it, and that the person conducting the boat possessed competent skill, used due diligence, and provided hands of sufficient strength and experience to assist him.
The propriety of the decision it is believed has not been questioned. We have at least no report of any effort to disturb it. The case may therefore be regarded as settling that the liabilities of common carriers upon our navigable streams are fixed by the common law rule, and that losses arising from the ordinary dangers of the navigation, however great and however carefully guarded against, do not fall within the exception.
It is contended by the plaintiffs in error, that the evidence offered by them in the Court below, tended to shew that the loss sustained by the plaintiff was occasioned by such an extraordinary peril as negatived all legal inference of negligence on the part of the carrier, and made the loss referrible to the act of God; and that *193 the instruction given by the Gourt at the instance of the plaintiff was erroneous and prejudicial to them.
Tt appears from the bill of exceptions, that the plaintiff having proved that he delivered at the Kanawha Salines in the county of Kanawha, on board of a steamboat in the charge of the defendants, who were the owners thereof, and common carriers, a quantity of salt, to be carried on the said boat to Nashville, in the State of Tennessee, for the transportation of which the defendants were to receive a stipulated freight per barrel and that the said boat freighted with said salt proceeded on her voyage as far as to the confluence of the Elk river with the Kanawha, when she stranded, sprung a leak and filled with water, whereby a portion of the salt was wholly lost, and the balance much damaged and impaired in value: and the defendants having then introduced evidence tending to prove that the water in the river was in good navigable condition ; that the boat was conducted through the ordinary channel for steamboat navigation; that some eight or ten days before the boat proceeded on her voyage there was a rise of Elk river, a tributary of the Kanawha., and the ice gorged at its mouth, and a bar of sand and gravel formed in the channel along which the boat had to pass, and that the officers and crew of the boat were ignorant of the formation of the bar when the boat stranded upon it; and that the officers and crew used their efforts to save the salt after the boat had so stranded : the plaintiff moved the Court to instruct the jury upon the law governing the case: Whereupon the Court instructed the jury that if they believed from the evidence that the boat was stranded by running upon a bar previously formed in the ordinary channel of the river; but that the existence of the bar might by human foresight and diligence have been ascertained and avoided, although the navigators or those in charge of *194 the boat were ignorant of its existence at the time the boat ran upon it, the defendants were liable for the loss (if any) of the salt freighted by them on the boat, occasioned by its stranding; although the jury might be satisfied that the defendants, after the boat stranded, used all the means within their power and control, to preserve the freight on board the boat from being lost or injured.
Among the strongest authorities cited in behalf of the plaintiffs in error are the cases of Smyrl v. Niolon, 2 Bailey’s R. 421, and Williams v. Grant, 1 Conn. R. 487. In the former it was held that a loss occasioned by a boat’s running on an unknown “ snag” in the usual channel of the river, is referable to the act of God, and that the carrier will be excused; and in the latter it was said that striking upon a rock in the sea not generally known to navigators, and actually not known to the master of the ship, is the act of God. And other authorities go so far as to assert, that if an obstruction be secretly sunk in the stream, and not being known to the carrier, his boat founder, he would be excused. The last proposition stands condemned by the leading cases, both English and American. In the case of Forward v. Pittard, 1 T. R. 27, Lord Mansfield says, that “ to present litigation, collusion and the necessity of going into circumstances impossible to be unravelled, the law presumes against the carrier, unless he shews it was done by the king’s enemies, or by such an accident as could not happen by the intervention of man, as storms, lightning and tempests.” The same doctrine is strongly stated in M’Arthur v. Sears, 21 Wend. R. 196, where it is said, that “ no matter what degree of prudence may be exercised by the carrier and his servants ; although the delusion by which it is baffled, or the force by which it is overcome, be inevitable ; yet if it be the result of human means, the carrier is responsible.”
*195 These eases dearly restrict the excuse of the carrier for losses occasioned by obstructions in the stream, to such obstructions as are wholly the result of natural causes. And the cases in which the carriers have been exonerated from losses occasioned by such obstructions, as Smyrl v. Niolon, and Williams v. Grant, before mentioned, will, 1 think, upon examination, be found to be cases in which either the bills of lading contained the exception “ of the perils of the river,” or in which that exception has been confounded with the exception of the “act of God.” In the case of M'Arthur v. Sears, a distinction between the two phrases is pointed out. It is shewn that the exception “of dangers or perils of the sea or river,” often contained in bills of lading, are of much broader compass than the words “ act of God and the case of Gordon v. Buchanan, 5 Yerg. R. 71, is cited with approbation, in which it is said that “ many of the disasters which would not come within the definition of the act of God, would fall within the former exception ; such for instance as losses occasioned by hidden obstructions in the river newly placed there, and of a character that human skill and foresight could not have discovered and avoided.”
In a note to the case of Coggs v. Barnard, in the American edition of Smith’s Leading Cases, 43 Law Lib. 180, the American decisions are collated and reviewed, and a definition is given to the expression “ act of God,” which expresses, I think, with precision, its true meaning. The true notion of the exception is there held to be “ those losses that are occasioned exclusively by the violence of nature; by that kind of force of the elements, which human ability could not have foreseen ox prevented; such as lightning, tornadoes, sudden squalls of wind.”—“ The principle that all human agency is to be excluded from creating or entering into the cause of mischief, in order that it may be deemed the act of God, shuts out those cases where the natural object in ques *196 tion is made a cause of mischief, solely by the act of the captain in bringing his vessel,’into that particular position where alone that natural object could cause mischief: rocks, shoals, currents, &c., are not, by their own nature and inherently, agents of mischief and causes of danger, as tempests, lightning, &c., are.”
The act of God which excuses the carrier must therefore, I think, be a direct and violent act of nature.
The rule it is insisted is a harsh one upon the carrier, and it is argued that the Court should be slow to extend it further than it is fully sustained by the cases. However harsh the rule may at first appear to be, it has been long established, and is well founded on maxims of public policy and convenience ; and viewing the carrier in the light of an insurer, it is of the utmost importance to him, as well as to the public who deal with him, that the acts for which he is to be excused should have a plain and well defined meaning. When it is understood that no act is within the exception, except such a violent act of nature as implies the entire exclusion of all human agency, the liabilities of the carrier are' plainly marked out, and a standard is fixed by which the extent of the compensation to indemnify him for his risks can be readily measured and. ascertained. The rule, too, when so understood, puts to rest many perplexing questions of fact, in the litigation of which the advantage is always on the side of the carrier. Under this rule the carrier is not permitted to go into proofs of care or diligence, and the owner of the goods is not required to adduce evidence of negligence till the loss in question is shewn to be the immediate result of an extraordinary convulsion of nature, or of a direct visitation of the elements, against which the aids of science and skill are of no avail.
So understanding the law, I do not perceive how the defendants in error could have been prejudiced by the *197 instruction complained of, and am of opinion to affirm . , the judgment.
The other Judges concurred in Judge Daniel’s nion. . opj-
Judgment affirmed,